UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLIFFORD PISANO
*Plaintiff*

v.                                                                  No. 1-13-CV-11409-NMG

TOM AMBROSINO
MICHAEL MURPHY
PAUL CAPIZZI
CITY OF REVERE
*Defendants*

DEFENDANTS' MEMORANDU M OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

1. **Preliminary Statement**:

   This action arises out of the city's decision not to reappoint the plaintiff as a school crossing guard due to a number of incidents for which he was disciplined, some of which qualify as offenses against the criminal laws of Massachusetts. The plaintiff claims that he was terminated as the result of his involvement in some level of activity concerning an attempt to unionize crossing guards. The defendants maintain that the plaintiff committed a number of violations that make him unsuitable to be reappointed to a position that require him to direct traffic, guide children, deal with the public, and follow directives of the police department.

   Plaintiff initially sought redress in the form of a grievance to the American Arbitration Association, claiming protections as a union member. The arbitrator found that the plaintiff was not a member of the union and dismissed the grievance. He then filed suit in superior court seeking an order vacating the arbitrator's decision. The case was dismissed and final judgment entered in favor of the City of Revere.

Plaintiff then brought a complaint in this court alleging:

1. Violation of civil rights under 42 U.S.C. Section 1983;

2. Conspiracy to violate civil rights under 42 U.S.C. Section 1985;

3. A state claim for unlawful termination;

4. A claim for common-law intentional infliction of emotional distress; and,

5. A claim for common-law negligent infliction of emotional distress.

**2. Statement of Facts**:

The City of Revere employs a number of school crossing guards to direct and guide children to and from their school buildings and to cross them safely across the streets surrounding the schools. Crossing guards are appointed by the mayor to serve from year to year, coterminous with the school year. Clifford Pisano was a crossing guard appointed by Mayor Ambrosino and reappointed a number of times thereafter until 2010. Facts, ¶¶ 1,5.

On December 8, 2008, Pisano was suspended for a period of one day for insubordination and showing disrespect to a superior. Facts, ¶ 6.

In 2009, Pisano was involved in an off-duty incident on Revere Beach when he and a companion approached a senior citizen volunteer who was crossing pedestrians across Revere Beach Boulevard to attend a farmers market. The woman, Rose Napolitano, was wearing a florescent vest as she and other volunteers accompanied pedestrians across the boulevard. Pisano took offense to the fact that she was wearing a safety vest. He confronted, intimidated, and assaulted the senior volunteer while chastising her for wearing the vest. The volunteer wrote a formal complaint to the police department. Facts, ¶ 7.

As a result of the complaint, Captain Michael Murphy called Mr. Pisano by telephone and

ordered him to present himself in the captain's office. Rather than obeying the captain's order, Pisano telephoned the police station to say that he would not come to the police station without a union representative. At the time, there was no union representing the crossing guards, and Pisano was not a member of any union. Facts, ¶¶ 8,9.

Due to Pisano's failure to present himself at the police station, Captain Murphy ordered him to appear for a hearing on September 14, 2009. The officer tasked with serving Pisano with the notice was Sergeant Graf. When the sergeant attempted to serve the notice upon Pisano at his school post, Pisano refused to accept the papers and became abusive to the officer in view of the public. Facts, ¶¶ 9, 10.

Pisano attended the hearing in Murphy's office with a representative from the AFSCME union which had been negotiating to represent crossing guards but had not yet entered into a Collective Bargaining Agreement. Facts, ¶ 11.

At the hearing, Pisano agreed to a settlement of the charges and agreed to take a suspension. The terms of the agreement are memorialized in a letter from Captain Murphy to Pisano on September 15, 2009. Facts, ¶ 14.

Pisano faced three charges: (1) Assault on a 75 year old female volunteer; (2) Failure to report as ordered on September 11, 2009; and, (3) Refusal to accept service of notice while on duty and disrespectful demeanor toward Sgt. Graf. Facts, ¶ 15.

Pisano agreed to accept a two suspensions, one for ten days to commence on September 15, 2009 and a second ten day suspension to be held in abeyance for one year. Facts, ¶ 15.

Between that date and the end of the 2010 school year, Pisano was observed on numerous occasions directing traffic through a red light without any authority to do so, and further

confronting vehicle drivers at his crossing post. Facts, ¶ 16.

Additionally, on April 10, 2010, Pisano was discovered surreptitiously audio taping a union membership meeting at the Revere police station and refused demands to turn off the recorder. Facts, ¶ 17.

At the end of the 2009-2010 school year, Mayor Amborsino considered crossing guards for reappointment for the 2010-2011 school year. At that time the mayor had information regarding the behavior and performance of Pisano as a crossing guard. Based on Pisano's violations, suspensions, and pattern of poor behavior, the mayor decided not to reappoint Pisano. Facts, ¶ 18.

Although there was no collective bargaining agreement with any union at the time of the mayor's decision (the Collective Bargaining Agreement having been effective on July 1, 2010) and although Pisano was not a member of any union at the time, he brought a grievance to the American Arbitration Association complaining of the action against him. Facts, ¶¶ 21, 22, 23, 24.

The AAA, after a hearing, dismissed the grievance on the grounds that Pisano was not a union member. He sought relief in the superior court in the nature of an action seeking to vacate the arbitrator's decision. The superior court upheld the decision and dismissed the complaint. Facts, ¶¶ 24, 25.

**3. Summary Judgment Standard**:

Federal Rule of Civil Procedure 56 permits a Court to grant summary judgment as to any claim or part of a claim. Fed. R. Civ. P. 56(a). The role of summary judgment is "to piece the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Johnson v. Gordon, 409 F. 3d 12, 16-17 (1st Cir. 2005) (quoting Garside v. Osco Drug, Inc. 895

F. 2d 46, 50 (1st Cir. 1990). The burden is on the moving party to show "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exits where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id. At 258.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine triable issue. Celotex Corp. V. Catrett, 477 U.S. 317, 324 (1986). The Court must review the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. Johnson, 409 F. 3d at 17. Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party in entitled to judgment as a matter of law. Id.

4. The 42 U.S.C. §1983 Claim:

> *Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the*

> *purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

Section 1983 does not create substantive rights but is rather a procedudral mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 271 (1994). It is the plaintiff's burden to identify the particular underlying constitutional or statutory right that has been impacted.

In order to state a claim for deprivation of rights under 42 U.S.C. § 1983, plaintiff must show that "the conduct complained of was committed by a person acting under color of law." Parrat v. Taylor, 451 U.S. 527, 535 (1981); see also Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir. 1989). Second, plaintiffs must show that defendants' conduct in fact deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. Rogan v. City of Boston, 267 F. 3d 24, 27 (1st Cir. 2001) See, Parrat, 451 U.S. at 535; Gutierrez-Rodriguez, 882 F.2d at 559; Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1985). Third, plaintiffs must show that defendants' conduct caused the deprivation of federal constitutional rights. *See* Monell v. Department of Social Servs., 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989). Finally, defendants' conduct must have been intentional, grossly negligent, or must have amounted to "reckless or callous indifference" to the constitutional rights of others. Gutierrez-Rodriguez, 882 F.2d at 569.

5. <u>Arguments:</u>

**ARGUMENT ONE:**

**Plaintiff has not set forth sufficient factual allegations
to state a claim under § 1983 against any of the defendants
and there are no issues of fact to be tried by the Court .**.

In order to succeed on an allegation of violation of civil rights, a plaintiff must do more than rely on "conclusory allegations, improbable inferences or unsupported speculation" to survive summary judgment. <u>Lopera v. Town of Coventry</u>, 640 F.3d 388 (1st Cir. 2011). The plaintiff has failed to identify the right alleged to be violated by any of the defendants.

The plaintiff's case is set out in his answer to Interrogatory 5. He was asked to set out his case against each defendant as follows:

**Interrogatory No. 5**

**With respect to each defendant named in your complaint, state each and every fact that you claim supports your allegation that:**

**(A)**     **Your civil rights were violated in contravention of 42 U.S.C. § 1983;**
**(B)**     **The defendants conspired to violate your civil rights as defined in 42 U.S.C. § 1985;**
**( C)**     **That you were wrongfully terminated from your position as a crossing guard;**
**(D)**     **You suffered emotional distress as a result of any act or omission of each of the defendants;**
**(E)**     **Any monetary loss, medical expenses, couseling expenses, or other loss or damages that you claim were suffered by you as a result of the allegations you proffer in your Complaint.**

*Response to Interrogatory No. 5*

*I was working as a crossing guard and sought to unionize the employees working as crossing guards. I spoke to Michael DiPrizio about this effort. A union was formed and a contract was ratified in April 2010. I was terminated on June 17, 2010 solely due to my efforts to unionize this group.*

*I contend that each defendant Thomas Ambrosino, Michael Murphy, Paul Capizzi*

7

> *and the City of Revere each in their capacities as officials of the City of Revere worked to terminate me from my position as a crossing guard. I believe this action was taken as a form of retaliation for my actions in unionizing the crossing guards. I was subject to allegations that I committed a crime of which I am innocent, and furthermore, the defendant Michael Murphy failed to investigate these allegations and was not forthcoming when I was terminated from my position. I further contend I was denied substantive due process during my termination by the City of Revere as I was not given a fair hearing. The defendants Ambrosino and Cappizzi knew full well this was happening and did nothing to stop it. The above-referenced caused me to suffer great humiliation and anxiety and cause great emotional distress.*

The plaintiff alleges that all of these public officials conspired to fire him from a $10.00 per hour crossing guard job. He also alleges that this was done in retaliation for his efforts to unionize the crossing guards. However, he simply states that he <u>believes</u> that there was some sort of retaliation without pointing to any evidence that this is true. He also is unable to set out what each defendant did to support each count of the complaint.

The reason he was not re-appointed is that he continually exhibited behavior and traits that endangered the public and showed a lack of judgment sufficient to be entrusted with the lives and safety of school children. It has nothing to so with any supposed or imagined union activity.

It was within the discretion of the mayor to appoint or not appoint a crossing guard for the school year. There is nothing in the record to show that Mayor Ambrosino violated Pisano's civil rights or acted in any way other than was reasonable in the circumstances. If the Court determines that a plaintiff has alleged a clearly established right at the time the incident occurred, then the analysis shifts to a determination of whether a reasonable official would have known that his actions violated that right. The standard is one of "objective legal reasonableness." A government official can claim immunity, despite the clear existence of a

constitutional principle that governs the case. The objective reasonableness of the official's actions is a question of law. Johnson v. Jones, 515 U.S. 304 (1995).

Under that analysis, (1) Ambrosino's conduct does not violate Pisano's civil rights. (2) Captain Murphy's conduct does not violate Pisano's civil rights. (3) Capizzi, the city solicitor, who had nothing at all to do with the case other than defend it at the AAA and the superior court did nothing to violate Pisano's civil rights. (4) The City of Revere cannot be held responsible for any of the actions complained of by Pisano.

Even as Pisano seeks to impose liability on the City for the actions alleged by individual officers, a party bringing such a claim cannot establish the City's liability unless he or she can show that the City, as a result of its policies or customs, was the moving force behind the violation of his or her rights. Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). Since Pisno fails to identify offensive customs or policies of the City or to demonstrate how these policies or customs caused him injury, he cannot recover under 42 U.S.C. §1983 against the city or any of the named individuals.

The conspiracy claim under 42 U.S.C. § 1985 must be dismissed and judgment entered in favor of all defendants.

### ARGUMENT TWO:

**Plaintiff has not set forth sufficient factual allegations to support a conspiracy claim under § 1985 against any of the defendants and there are no issues of fact to be tried by the Court.**

Similar to the § 1983 claim, the plaintiff has failed to set forth any evidence other than the bland, general allegations of the complaint.

The fact is that Pisano accepted the suspensions from duty in connection with the three

violations, i.e., assault, failure to appear, disrespect to superior. It is the behavior of the plaintiff that caused Captain Murphy and Mayor Ambrosino to have grave concerns about Pisano's suitability to hold a position of public responsibility with the City of Revere.

### ARGUMENT THREE:

### The state claim of wrongful termination is not supported by facts and must be dismissed.

Pisano was an employee at will. As such, his employment was subject to being "terminated at any time for any reason or for no reason at all." Upton v. JWP Businessland, 425 Mass. 756, 757 (1997) (citations omitted). See GTE Products Corp. v. Stewart, 421 Mass. 22, 26 (1995), citing Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). The rule is not absolute. Liability may be imposed upon an employer if the employer terminates an at-will employee for a reason that violates clearly established public policy. Upton, supra at 757. See Flesner v. Technical Communications Corp., 410 Mass. 805, 810 (1991). The existence of a clearly defined public policy is a question of law for the court. Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472 (1992). It is for the judge, not the jury, to "determine whether, on the evidence, there is a basis for finding that a well-defined, important public policy has been violated." Mello v. Stop & Shop Cos., 402 Mass. 555, 561 n.7, (1988).

The Massachusetts governing law, as set out in the Division of Labor Relations Decision provides that to establish that an employer took action in retaliation for his alleged union activity, he must first establish four elements: 1) the employee engaged in protected activity; 2) the employer knew of the protected activity; 3) the employer took adverse action against the employee; 4) the employer took the adverse action to discourage the protected activity. If the

10

employer provides lawful reasons for the alleged conduct, the employee must then prove that "but for" the protected activity, the employer would not have taken the adverse action. <u>Trustees of Forbes Library</u>, 394 Mass. 559, 565-566 (1981). (Internal citations omitted.) Decision, at p. 6.

In this case there is ample evidence of misconduct on the part of Pisano to warrant the mayor to decide not to reappoint him for the 2010-2011 school year. It was within the sound discretion of Mayor Ambrosino to take into account all of Pisano's volatile, aggressive, disrespectful, assaultive, and irrational behavior in judging him unsuitable for reappointment.

Neither Captain Murphy nor Mr. Capizzi had any authority to appoint or decline to reappoint Mr. Pisano. Captain Murphy, by virtue of his position, had the responsibility to deal with problems and complaints concerning school crossing guards.  The 10-day suspension was agreed to by Mr. Pisano after a conference in Murphy's office, with Pisano's representative present, and where the complaint made by the senior citizen volunteer was discussed. Also discussed was Mr. Pisano's repeated disrespectful and insubordinate behavior toward his supervising crossing guard and senior police officials.

The decision not to reappoint was made by the mayor out of a concern for public safety in general and for the safety and security of the school children specifically.

Mr. Capizzi, as city solicitor, defended the against Pisano's grievances and administrative complaints as the attorney and public advocate for the city of Revere. Nothing in his conduct suggests that he did anything to offend against the rights and privileges of Mr. Pisano.

There are no facts proffered by the plaintiff to establish that his failure to be re-appointed was the result of anything other than the mayor's proper exercise of discretion not to re-appoint an unsuitable employee. Further more, Captain Murphy and Solicitor Paul Capizzi are not

implicated other than the plaintiff's allegation that they "knew" about his termination. Therefore, there are no material facts in dispute. Judgement in favor of all defendants on this count must be granted.

## ARGUMENT FOUR:

**The common law claim of intentional infliction of emotional distress must be dismissed.**

To sustain a claim for intentional infliction of emotional distress under Massachusetts law, a plaintiff must show "(1) that the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress" Barbosa v. Conlon, 962 F. Supp. 2d 316, 334 (2013) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976).

With respect to the conduct of all defendants, there are no facts in dispute that any of them intended to cause, or should have known that his conduct would cause, emotional distress nor that the conduct of any defendant – the mayor as appointing authority, the captain as supervisor, or city solicitor as legal counsel – was extreme. Furthermore, the plaintiff sets forth no evidence of emotional distress in his answers to interrogatories.

This claim must be dismissed and judgment entered in favor of the defendants.

## ARGUMENT FIVE:

**The common law claim of negligent infliction of emotional distress
must be dismissed and judgment entered in favor of each of the defendants.**

In order to make out a case for negligent infliction of emotional distress in massachusetts, the plaintiff must prove (1)that the defendant was negligent; (2) that the plaintiff suffered

emotional distress; (3) that the plaintiff's emotional distress was causally related to the event resulting from the defendant's negligence;   (4) the plaintiff must establish that a reasonable person would have suffered emotional distress under the circumstances of the case; and (5)  the plaintiff must also establish objective corroboration of the mental distress alleged. The plaintiff must establish this objective corroboration of harm by showing symptoms of physical harm caused by the emotional distress. <u>Sullivan v. Boston Gas Co.</u>, 414 Mass. 129, 132 (1993).

Referring to plaintiff's answer to Interrogatory No. 5, when asked to set out each and every fact supporting the allegation "that you suffered emotional distress as a result of any act or omission of each of the defendants" the plaintiff answered simply that he was caused to "suffer great humiliation and anxiety" and "emotional distress".  This, without establishing objective corroboration of mental distress and symptoms, is insufficient. <u>Payton v. Abbott Labs</u>, 386 Mass. 540, 557 (1993).

It has not been established that the actions of the mayor, captain, or solicitor was negligent. There are no material facts in dispute. Summary judgment on this claim should be granted in favor of the City of Revere and the three individual defendants.

**6. <u>Conclusion</u>**:

For the reasons set out above, summary judgment should be entered in favor of all defendants on all claims.

                                        Respectfully submitted,
                                        By defendants' attorney

                                        /s/ *James J. Cipoletta*
                                        James J. Cipoletta
                                        MA Bar No. 084260
                                        Citizens Bank Building
                                        385 Broadway - Suite 307
                                        Revere, Massachusetts 02151
                                        Telephone 781.289.7777

Dated: May 2, 2016

<u>Certificate of Service</u>

I certify that the foregoing document, filed with the ECF system will be sent electronically to all registered participants as identified on the NEF.

                                        */s/ James J. Cipoletta*
                                        James J. Cipoletta